UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| v. | * | |
| | * | Criminal Action No. 22-30027-MGM |
| CARLOS GONZALEZ, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM AND ORDER REGARDING
MOTION FOR *FRANKS* HEARING
(Dkt. No. 183)

January 8, 2026

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Carlos Gonzalez ("Defendant") filed a motion to suppress on August 29, 2023—pursuing a "four-corners" probable cause challenge to the search warrant for 8 Mereline Avenue, East Longmeadow—which this court granted on December 18, 2023. *See United States v. Gonzalez*, 707 F. Supp. 3d 37 (D. Mass. 2023). On appeal, the First Circuit reversed based on the good faith exception to the exclusionary rule but noted that Defendant could pursue a challenge pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), on remand. *See United States v. Gonzalez*, 113 F.4th 140 (1st Cir. 2024). Although Defendant raised no specific *Franks* issue before the four-corners hearing, defense counsel had repeatedly indicated he was pursuing development of a *Franks* challenge.

Defendant now seeks an evidentiary hearing under *Franks* following the late disclosure of discovery from the government less than two months before the scheduled trial date. Defendant asserts two separate intentional or reckless omissions from the search warrant affidavit undermine

probable cause: (1) information regarding surveillance conducted on a related Springfield property (49 Norman Street) on November 23, 2021; and (2) information regarding a pole camera directed at 8 Mereline Avenue, in January of 2022. The court finds Defendant has made the requisite showing to obtain a *Franks* hearing as to the omission regarding the surveillance conducted on 49 Norman Street but not as to the pole camera at 8 Mereline Avenue.

## II. BACKGROUND

On December 10, 2021, Special Agent Scott Smith of the DEA submitted an application for a warrant to search 8 Mereline Avenue, supported by a 64-page affidavit, which was authorized by Magistrate Judge Katherine Robertson. (*See* Dkt. No. 185-1 ¶ 138; Case Number 21-MJ-3205-KAR (Dkt. No. 4).) The affidavit covered events occurring from February of 2018 to November 3, 2021. (*Id.*) However, "[f]or reasons related to the investigation," the warrant was "not executed within the authorized 14-day period." (Dkt. No. 185-1 ¶ 138; Case Number 21-MJ-32050-KAR (Dkt. No. 7).)[1]

On January 20, 2022, Smith submitted search warrant applications for those same two addresses, supported by an affidavit "largely identical" to the one submitted on December 10, 2021, except for seven new paragraphs describing events on January 6 and 7, 2022. (Dkt. No. 185-1 ¶¶ 73-79, 138.) Judge Robertson authorized the search warrant for 8 Mereline Avenue (and one for 9 N. Ramah Circle) that same day. (Case Number 22-MJ-3006-KAR (Dkt. No. 6).)

The affidavit described the multi-year investigation into an operation which manufactured and distributed counterfeit oxycodone pills containing heroin and fentanyl led by Michael Matos. Smith explained that his affidavit was filed in support of search warrant applications directed at two "Target Location[s]": 8 Mereline Avenue, and Hector Ramos's auto-repair shop at 9 N. Ramah

---

[1] On December 10, 2021, Smith also filed a search warrant application for another address, 9 N. Ramah Circle, Agawam, an auto-repair shop operated by Hector Ramos, supported by the same affidavit, and that warrant was not executed within the 14-day period either. (*See* Dkt. No. 185-1 ¶ 138; Case Number 21-MJ-3204-KAR (Dkt. Nos. 4, 7).)

Circle, Agawam. (Dkt. No. 185-1 ¶ 2.) As to 8 Mereline Avenue, Matos and his wife Neysha purchased the two-family residence in January of 2018 and lived in the second-floor apartment until September of 2021, when they moved to a home in Somers, Connecticut. Defendant and Kiara Rodriguez-Santiago lived in the first-floor apartment at 8 Mereline Avenue. The property included a basement that Smith believed could only be accessed through a bulkhead door located in the back of the residence.

In February of 2018, pills containing heroin, but with markings made to look like they were oxycodone, were discovered in a toolbox repossessed from Matos and reported to the Southwick Police Department. In July and August of 2018, officers of the East Longmeadow Police Department conducted two traffic stops near 8 Mereline Avenue, recovering counterfeit oxycodone pills and approximately twelve grams of heroin. The operator of the vehicle that was stopped in August of 2018—Luis Rivera of 50 Forest Street, Springfield—had ties to Matos and Neysha and 8 Mereline Avenue.

In February of 2019, the FDA began investigating Matos after learning that he had been purchasing online numerous items commonly used to manufacture counterfeit controlled substances. A search warrant for an email address used by Matos was authorized, which resulted in obtaining unspecified "valuable information" regarding Matos' operation, but "the investigation did not result in any further court authorized search and seizure warrants." (Dkt. No. 185-1 ¶ 24.)

In April of 2021, two individuals were arrested after the discovery of a large-scale fentanyl pill processing operation in a residence in Springfield. They both agreed to cooperate as confidential informants ("CIs") and explained that they learned how to manufacture counterfeit oxycodone pills, in part, from an individual matching the description and residence of Matos. One of the CIs met Matos at Ramos's Agawam auto-repair shop, where Matos showed him how to use a tableting machine. Matos carried the tableting machine in a large suitcase wrapped inside a comforter and also

3

used a second suitcase to carry the other drug-processing equipment. The same CI also visited 8 Mereline Avenue on three occasions "while Matos mixed and processed the heroin into counterfeit oxycodone tablets utilizing a pill press machine" in the basement. (Dkt. No. 185-1 ¶ 42.) The last time the CI visited 8 Mereline Avenue was in April or May of 2020.

In December of 2020, Customs and Border Patrol officers seized a package with a pill-press machine shipped to Neysha at 8 Mereline Avenue. Records also revealed Kiara Rodriguez was the listed recipient of other packages with similar machines in June of 2020 at the same address. In February of 2021, Kiara Rodriguez-Santiago ordered a pill-press punch set to be shipped to 8 Mereline Avenue. In May of 2021, Defendant ordered two pill-press punch sets to be shipped to the same address.[2]

In July of 2021, a confidential informant told agents a 2006 Acura MDX owned by Matos and operated by Neysha was involved in a traffic accident, was towed to CJ's Towing Lot in Springfield, and was believed to have a hidden compartment with a large amount of fentanyl. Neysha signed ownership of the vehicle over to CJ's Towing because it was a complete loss from the accident. A subsequent search of the vehicle at Leveille's Auto Salvage in Somers, Connecticut disclosed a black bag containing 25 rounds of 9mm ammunition and a large aftermarket hidden compartment under the floor, which contained two clear bags with a small number of green pills with the markings "A" and "214." (Dkt. No. 185-1 ¶ 49.) The Massachusetts Registry Database revealed the vehicle was registered to Keanu Vega of 830 Chicopee St., Chicopee, Massachusetts, and a search of Vega's name in a commercial database also lists Kiana L. Rodriguez at that same

---

[2] The pill-press punch sets created pills containing certain markings, including "M," "15, and "A|215." (Dkt. No. 185-1 ¶ 110.) In July, August, and September of 2021, investigators used a different confidential informant for controlled purchases of blue counterfeit OxyContin pills stamped with "A|215" from Ramos's auto-repair shop. The same confidential information also purchased blue counterfeit OxyContin pills stamped with "M" on one side and "30" on the other from Ramos's auto-repair shop during the week of December 6, 2021.

address in Chicopee. The affiant was familiar with Kiana's name[3] because he had observed a vehicle registered to her parked at 8 Mereline Avenue on May 24, 2021.

Matos and Neysha purchased a home at 80 Pond Circle, Somers, Connecticut on July 1, 2021. On September 6, 2021, they moved from 8 Mereline Avenue to the Somers residence. On September 13, 2021, agents surveilled Matos and Defendant leaving 8 Mereline Avenue in a Chevy pickup truck registered to Defendant and then travel to Ramos's Agawam auto-repair shop. Matos and Defendant met with Ramos inside the office, and then Defendant traveled with an unidentified man back to 8 Mereline Avenue in a Ford F-150 pickup truck registered to Neysha. On that same date, agents observed at 8 Mereline Avenue a gray 2009 Acura TL sedan (license plate 1BDY82) registered to Nilda Gonzalez of 8 Mereline Avenue.

On September 16, 2021,[4] Defendant and three others drove in the F-150 pickup truck from Ramos's auto-repair shop to Walmart in Westfield. Defendant paid $461.45 in cash "for a number of items which are commonly utilized for processing narcotics." (Dkt. No. 185-1 ¶ 66.) Defendant and the others loaded the purchased items into the bed of the F-150. Agents then followed the F-150 to a residence at 49 Norman Street in Springfield, where the truck backed into the driveway of a two-car garage and parked the rear bed "very close to the open garage door." (*Id.* ¶ 65.) All of the occupants exited the truck and then re-entered it three minutes later and drove to 8 Mereline Avenue.

---

[3] It appears that Kiara Rodriguez (sometimes referred to as Kiara Rodriguez-Santiago) and Kiana L. Rodriguez are different people, although it is not entirely clear from the affidavit. Whether they are the same or different individuals does not affect the substantive *Franks* analysis.

[4] Earlier in the day on September 16, 2021, an agent observed Matos drive a gray GMC pickup truck to a gas station in East Longmeadow, where (after vacuuming and re-fueling the GMC) he entered the passenger seat of a Lexus sedan and then exited and returned to the GMC a few moments later. The affiant stated: "Based on my training and experience, I believe that this behavior, Matos entering a vehicle for a short period of time in a public parking lot, is indicative of a potential narcotics transaction taking place." (Dkt. No. 185-1 ¶ 61.)

On November 3, 2021, agents surveilled Matos at 8 Mereline Avenue, where he stayed for several hours. Matos left the house with an unidentified male, each carrying a box that appeared to be the same size as two Amazon boxes delivered earlier in the day. Approximately 40 minutes later, a black 2004 Acura TL sedan parked in front of 8 Mereline Avenue. The Acura was registered to Kassandra A. Rivera at 50 Forest Street, Springfield, which was the same address used by Luis Rivera when he was stopped by the police near 8 Mereline Avenue with heroin in his possession in August of 2018. An unidentified Hispanic man with glasses and a beard exited the Acura and walked down the driveway of the residence.

On January 6, 2022, the affiant observed a black 2017 Tesla Model X (license plate 3DRL60) parked in front of 8 Mereline Avenue and later saw Neysha leave the property briefly in the Tesla before returning. Investigators learned the Tesla was purchased on December 23, 2021 by Felipe Figueroa and Matos, using an address of 49 Norman Street—the home where Defendant and others stopped directly after purchasing drug-processing supplies from Walmart on September 16, 2021. The affiant also stated he had observed the Tesla at 8 Mereline Avenue "on several occasions over the past several weeks." (Dkt. No. 185-1 ¶ 79.) The gray 2009 Acura TL sedan (license plate 1BDY82), registered to Nilda Gonzalez at 8 Mereline Avenue, was also observed near the residence.

## III. PROCEDURAL HISTORY

Following the search of 8 Mereline Avenue on January 25, 2022, a grand jury indicted Defendant, charging him with possession with intent to distribute 400 grams or more of fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). After some continuances, Defendant filed a motion to suppress the evidence seized during the search, asserting a four-corners challenge to the search warrant affidavit based on staleness and insufficient nexus between 8 Mereline Avenue

and evidence of drug activity. On the day of the hearing on the motion to suppress, Defendant's counsel filed another motion to continue and explained during the hearing that he wanted to pursue a *Franks* challenge. Defense counsel was concerned that going forward with the four-corners challenge first could foreclose a later *Franks* challenge. The court denied the motion to continue but, with the government's assent, made clear that Defendant was "not waiving [his] right to file a [later] *Franks* . . . request." (Dkt. No. 67 at 5.) At the end of the hearing, the court proposed that it delay issuing a decision on the motion to suppress and schedule a status conference in 30 days to determine if Defendant would also be filing a separate *Franks* motion. However, after the attorneys conferred, the Assistant United States Attorney asked on behalf of both parties that the court rule on the four-corners challenge first, explaining: "if you decide with the Defendant, for all intents and purposes, short of an appeal, the case is over. And so developing . . . another reason to suppress, and although work and time is going to go into that, you know, if I'm out of the box, I'm out of the box." (*Id.* at 32.) The court agreed with the parties' proposal and stated: "If the ruling is in the Government's favor, then the door is still open for there to be a supplement, if there's a showing for a *Franks* issue to be raised." (*Id.*)

On December 18, 2023, the court issued its decision on the four-corners challenge. *See Gonzalez*, 707 F. Supp. 3d 37. The court granted Defendant's motion to suppress, finding the information in the affidavit connecting 8 Mereline Avenue to the drug activity was impermissibly stale when the government applied for the search warrant in January of 2022. *Id.* at 46-50. The court concluded the information regarding the Walmart purchases on September 16, 2021 did not refresh the stale information or establish a sufficient connection to 8 Mereline Avenue because the items were likely unloaded at 49 Norman Street after the pickup truck backed into the driveway and parked "'the rear of the truck . . . very close to the open garage door,'" directly after leaving Walmart. *Id.* at 48 (quoting Dkt. No. 185-1 ¶ 65). The court also explained the affiant's contrary

"opinion that the items purchased at Walmart were 'likely' unloaded at 8 Mereline Avenue . . . .

appears to be . . . conjecture and wishful thinking to fit the Mereline theme," given that the affidavit

contained no specific information supporting the inference that the items were unloaded at 8

Mereline Avenue after the truck left 49 Norman Street. *Id.* at 49 (quoting Dkt. No. 185-1 ¶ 68).

Even after "considering the affiant's described law enforcement experience," the court declined to

accept his "unsupported and unexplained opinion in the face of reported facts which soundly

undermine that opinion." *Id.* In addition, the court concluded that the government had not met its

burden of demonstrating that the good-faith exception to the exclusionary rule applied, in light of

the weak probable cause showing and the government's "generic" and "'conclusory'" good-faith

argument in its briefing. *Id.* at 50-51 (quoting *United States v. Sheehan*, 70 F.4th 36, 51 (1st Cir. 2023)).

The government appealed the court's ruling. *See Gonzalez*, 113 F.4th 140. The First Circuit

explained that it viewed this court's probable cause determination "as a close call." *Id.* at 143. It

therefore decided to "bypass the probable-cause finding and proceed straight to the . . . good-faith

issue" and "assume[d] arguendo that the affidavit failed to establish probable cause that the evidence

of the pill-making operation would be found at 8 Mereline Avenue in late January 2022." *Id.* at 147.

The First Circuit held the good-faith exception applied, concluding "that it was objectively

reasonable for an officer to believe that Matos's pill-making operation was still underway at its

longstanding home base in early 2022." *Id.* at 148. The First Circuit based its conclusion on the

following "key facts" in the affidavit: "Matos still owned 8 Mereline Avenue and continued to live

nearby and visit; the remaining occupants of 8 Mereline Avenue were [Defendant] and his girlfriend,

who also appeared to be involved in the operation; and the pill-making operation had operated

successfully from 8 Mereline Avenue for years," so "an objectively reasonable officer could have

concluded that Matos had little reason to move it." *Id.*

The First Circuit also held that any "lurking *Franks* problems" should be addressed by this court "in the first instance" on remand. *Id.* at 152. After noting that this court made clear Defendant was not waiving his right to pursue a *Franks* request, the First Circuit explained that it did "not pass on any potential argument by [Defendant] that, under *Franks*, the warrant is nevertheless invalid and the evidence should be suppressed because the affidavit contains intentional or reckless material misrepresentations or omissions." *Id.* at 153. Because the First Circuit vacated this court's suppression order and remanded for further proceedings, it explained, "[Defendant] can make such an argument and challenge statements in the affidavit on remand." *Id.*

After remand, Defendant filed an initial motion for a *Franks* hearing, pointing to two alleged omissions from the affidavit: failing to provide sufficient updated information tying drug activity to 8 Mereline Avenue after the initial December 10, 2021 search warrant went unexecuted; and failing to include information regarding a prior case, *United States v. Roman*, 311 F. Supp. 3d 427 (D. Mass. 2018), in which this court found the same affiant (and other agents) violated *Franks* by including false information and omitting truthful information in that search warrant affidavit. (*See* Dkt. No. 132 at 17, 35.) The court rejected Defendant's arguments and denied a motion for reconsideration as well. (*See* Dkt. Nos. 124, 138.)

At the end of the hearing on Defendant's initial *Franks* request, Defendant's counsel raised the possibility that some discovery was missing:

> So the other thing that I want to know, the only investigative report we've ever gotten was the one for the day that the warrant was executed. There's nothing before that and nothing after that. Just the day the warrant was executed. For a long investigation like what happened between December 10th and the 20th of January, you would think there would be a report on that.

(Dkt. No. 132 at 44.) The court inquired with the Assistant United States Attorney whether there was any additional discovery the government was "obligated under the rules to produce." (*Id.* at 44-

45.) In response, the Assistant United States Attorney stated he believed everything had been turned over but stated that he would "check again." (*Id.* at 45.)

Thereafter, the court scheduled and then continued the trial date once. (Dkt. Nos. 128, 142.) On August 21, 2025, the Assistant United States Attorney filed a discovery letter stating that he was providing Defendant's counsel additional information and materials "[i]n accordance with the government's discovery obligations pursuant to Local Rule 116.1(c) and 116.2(b), Fed. R. Crim. P. 16(a)(1), and 18 U.S.C. § 3500." (Dkt. No. 150 at 1.) The materials included DEA-6 investigative reports regarding: surveillance at the Westfield Walmart on September 16, 2021; surveillance at 49 Norman Street on November 23, 2021; surveillance at 8 Mereline Avenue on January 6, 2022; an interview of Filipe Figueroa on January 27, 2022; and Defendant's arrest on August 23, 2022. The discovery letter also stated that the Assistant United States Attorney has "recently been informed there was a pole camera operating in front of 8 Mereline Avenue, East Longmeadow, MA between January 13, 2022 and February 2, 2022," and offered to make the video available to defense counsel. (*Id.* at 2.) Shortly thereafter, Defendant filed another motion to continue the trial based on the late discovery, which the court granted. (Dkt. No. 161.) The court then set a briefing schedule, and Defendant filed a motion to reopen the suppression litigation, seeking an evidentiary hearing under *Franks*. (Dkt. Nos. 161, 183, 186.)

## IV. STANDARD OF REVIEW

"Under *Franks*, 438 U.S. at 155, a defendant may request an evidentiary hearing to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit." *United States v. Hicks*, 575 F.3d 130, 138 (1st Cir. 2009). To obtain a *Franks* hearing, a defendant must make "a substantial preliminary showing that: (1) the affidavit contains an intentional or reckless false statement or omission, and (2) the false statement or omission was necessary to the finding of

probable cause." *Gonzalez*, 113 F.4th at 153 n.3; *see also United States v. Tanguay*, 787 F.3d 44, 49 (1st Cir. 2015) (explaining that, as to material omissions, "first, the omission must have been either intentional or reckless; and second, the omitted information, if incorporated into the affidavit, must be sufficient to vitiate probable cause."). "Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations." *United States v. Arias*, 848 F.3d 504, 511 (1st Cir. 2017) (quoting *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002)). Moreover, "[i]n the case of allegedly material omissions, recklessness may be inferred where the omitted information was critical to the probable cause determination." *United States v. Gifford*, 727 F.3d 92, 98-99 (1st Cir. 2013) (quoting *Burke v. Town of Walpole*, 405 F.3d 66, 81-82 (1st Cir. 2005)).

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place searched—the so-called 'nexus' element." *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015) (quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 1999)). As to the nexus element, the question is "whether, given all the circumstances set forth in the affidavit . . . , there exists a 'fair probability' evidence will be found in the place to be searched." *United States v. Roman*, 942 F.3d 43, 50 (1st Cir. 2019) (quoting *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir. 2015); *see also Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978) ("The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought."). Moreover, the home in particular is entitled to "the highest level of Fourth Amendment protection," *Morse v. Cloutier*, 869 F.3d 16, 23 (1st Cir. 2017) (quoting *Matalon v. Hynnes*, 806 F.3d 627, 633 (1st Cir. 2015)), as "the 'very core' of the Fourth Amendment is to be 'free from unreasonable governmental intrusion' into one's home," *Roman*, 942 F.3d at 50 (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)).

In addition, "[t]he 'commission' and 'nexus' elements in the 'probable cause' analysis each include a temporal component." *United States v. Zayas-Diaz*, 95 F.3d 105, 113 (1st Cir. 1996). That is,

> [t]he issuing magistrate must not only consider the accuracy and reliability of the historical facts related in the affidavit[], but must determine, *inter alia,* whether the totality of the circumstances reasonably inferable from the affidavit[] demonstrates a "fair probability" that evidence material to the "commission" of the probable crime will be disclosed at the search premises at about the time the search warrant would issue, rather than at some remote time.

*Id.*; *see also United States v. Floyd*, 740 F.3d 22, 33 (1st Cir. 2014) ("[A]n affidavit supporting a search warrant must contain timely information or else it will fail." (quoting *United States v. Schaefer,* 87 F.3d 562, 568 (1st Cir. 1996))).

## V. Analysis

In light of the late discovery, which prevented Defendant from raising these arguments earlier, Defendant seeks a *Franks* hearing based on two alleged omissions from the search warrant affidavit: (1) information regarding the surveillance conducted on 49 Norman Street on November 23, 2021; and (2) information regarding the pole camera directed at 8 Mereline Avenue, in January of 2022.[5]

---

[5] Defendant also references other late-disclosed discovery, including the surveillance at the Westfield Walmart on September 16, 2021, the surveillance at 8 Mereline Avenue on January 6, 2022, and the interview with Felipe Figueroa on January 27, 2022. However, Defendant only develops *Franks* arguments with regard to the 49 Norman Street surveillance and the pole camera near 8 Mereline Avenue. Accordingly, the court confines its analysis to those two alleged omissions. *See, e.g.*, *United States v. Williams*, 630 F.3d 44, 50 (1st Cir. 2010) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.' . . . Instead, 'a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.'" (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st Cir.1990))).

In addition, Defendant argues the warrant fails for lack of particularity, and the affidavit improperly omitted information regarding the *Franks* adjudication in the *Roman* case. As to the particularity argument, the court finds Defendant waived this argument by failing to raise it in conjunction with the four-corners challenge. Defendant also failed to raise the particularity argument along with his initial *Franks* request and, unlike the present *Franks* challenges, there is no argument that the government's late disclosure of discovery prevented him from raising the particularity argument earlier. (*See* Dkt. Nos. 103, 138.) As to the omission of the *Roman* information, the court has already addressed and rejected that argument. (Dkt. Nos. 124, 138.) Therefore, the court will not address these two arguments either.

As to the pole camera directed at 8 Mereline Avenue, even assuming the omission of this information from the affidavit was intentional or reckless, the court concludes its inclusion would not have undermined probable cause. Rather, in the court's view, adding this information to the affidavit would have strengthened, somewhat, the probable cause showing. The pole camera footage, which has been provided to the court, shows vehicles (some apparently associated with Matos, Defendant, and the pill-making operation) parked in front of 8 Mereline Avenue during the relevant timeframe between January 13, 2022 and January 25, 2022, and unidentified individuals exiting and entering the vehicles, sometimes carrying items to or from the vehicles.[6] This information is consistent with the conclusion that individuals associated with the pill-making operation continued to use the property in the days preceding the search, thereby supporting the inference that the property itself may have continued to be used in relation to the pill-making operation. While this inference, in the court's view, is not particularly strong, nothing in the pole camera footage materially detracts from the probable cause showing as to 8 Mereline Avenue.

The court, however, reaches a different conclusion as to the November 23, 2021 surveillance of 49 Norman Street. As identified in the four-corners motion to suppress decision, 49 Norman Street is a key address, since Defendant and three other men drove there directly from Walmart after purchasing pill-processing equipment on September 16, 2021. The truck backed up into the driveway of the garage at 49 Norman Street "very close to the open garage door," the four occupants exited the vehicle, and three minutes later they re-entered it and drove away from the property. Despite the obvious inference that the Walmart purchases were dropped off there, the

---

[6] One vehicle, a BMW with license plate 2HYW65, appears on at least two occasions during this time. This vehicle is discussed in the search warrant affidavit as having been purchased on August 20, 2020 by Neysha Matos and registered to 8 Mereline Avenue. (Dkt. No. 185-1 ¶¶ 114-15; *see also id.* ¶ 37.) Other vehicles shown in the pole camera footage appear to match the descriptions of different vehicles referenced in the search warrant affidavit as well, but the pole camera footage generally does not show the license plate numbers of the vehicles (with the exception of the BMW). The pole camera footage also appears to show some packages being delivered to 8 Mereline Avenue during this time.

affiant stated his belief that the materials "were likely brought to . . . 8 Mereline Avenue," not 49

Norman Street. (Dkt. No .185-1 ¶ 68.) The affidavit, however, provided no information about the

truck's positioning in connection with its subsequent stop at 8 Mereline Avenue or other details

suggesting the Walmart items were unloaded there. This court disagreed with the issuing Magistrate

Judge and rejected the affiant's opinion in this regard as speculative and, as a result, found the nexus

to 8 Mereline Avenue was stale by January 20, 2022, given that Matos (the leader of the operation)

and Neysha moved in July of 2021 and "all of the evidence demonstrating a tangible link" between

the address and the drug operation pre-dated the move by months. *Gonzalez*, 707 F. Supp. 3d at 47-

49. The First Circuit, while reversing based on the good faith exception, did not overturn this court's

lack of probable cause determination, which it described as a "close call." *Gonzalez*, 113 F.4th at 143,

47. As Defendant argues, adding the omitted November 23, 2021 surveillance information regarding

49 Norman Street to the picture weakens, in some respect, the affidavit's probable cause showing as

to 8 Mereline Avenue by "shin[ing] the light" brighter on the Norman Street address "as the most

likely repository for the items purchased at Walmart on September 16, 2021." (Dkt. No. 187 at 16.)[7]

The DEA-6 Investigative Report, describing the surveillance at 49 Norman Street on

November 23, 2021, begins by noting that this is the address where Defendant and three others

were observed after "picking up items related to a fentanyl pill press operation at Wal-Mart in

Westfield, MA on September 16, 2021." (Dkt. No. 175-1 at 16.) It then discusses several vehicles

registered to Luis Rivera, Felipe Figueora, and Nilda Gonzalez parked near 49 Norman Street during

---

[7] The court acknowledges the unusual posture of this case, following its initial four-corners decision and the First Circuit's reversal and remand on good faith. That is, normally "[i]n the case of an omission," the defendant must establish "that the inclusion of the omitted information would have led to a negative finding by the magistrate on probable cause." *United States v. Magee*, 834 F.3d 30, 33 (1st Cir. 2016) (quoting *United States v. McLellan*, 792 F.3d 200, 208 (1st Cir. 2015)). Here, however, the case history invites considering whether adding the omitted information also would have led to a negative probable cause finding by either this court or the First Circuit. Nevertheless, this *Franks* analysis as to omissions is "wholly objective," rather than focusing on the subjective analysis of a particular magistrate. *See United State v. Dessesaure*, 429 F.3d 359, 365-67, 369 (1st Cir. 2005) (favorably citing *United States v. Markling*, 7 F.3d 1309, 1316 (7th Cir. 1993) ("A rule focusing on the tainted information's actual influence on a particular magistrate would be inconsistent with *Franks* . . . .")); *see also United States v. Soto*, 799 F.3d 68, 82-83 (1st Cir. 2015).

the surveillance operation. The 2009 gray Acura sedan, with license plate 1BDY82, registered to Nilda Gonzalez, which was noted to have been observed at 8 Mereline Avenue "during previous surveillance operations targeting Matos," arrived approximately three hours after surveillance began. (*Id.* at 17.) Shortly after the Acura arrived, an agent observed Figueroa exit the front door of 49 Norman Street and walk toward the Acura "while a younger Hispanic male exited the driver's side of the Acura and walked around the rear of the vehicle to the passenger's side" and re-entered the vehicle as Figueroa entered the driver's side. (*Id.*) Shortly thereafter, Figueroa exited the Acura and returned to the residence, while the Hispanic male moved back into the driver's seat of the Acura. Then, a minute later, Figueroa exited the residence again carrying a lanyard with keys, walked toward a white Chevy van, turned the van on, and walked to the rear cargo doors of the van before walking over to the driver's side window of the Acura. Figueroa had "a short conversation" with the Hispanic male, then he walked back to the rear of the van, and the Acura drove away. (*Id.* at 18.) Shortly after the Acura left, Figueroa locked the van while it was still running and went back inside the residence; the van eventually stopped running and no one returned to it for the remainder of the surveillance. Agents followed the Acura to a residence in Springfield, where the Hispanic male exited the vehicle, walked behind the residence "for a short time," and then returned to the vehicle (when surveillance was terminated).

Another vehicle mentioned in the November 23, 2021 surveillance report was a gray Honda Accord with license plate 3DRL60, registered to Figueroa using both Norman Street and Mereline Avenue addresses. This same license plate number appeared in the January 20, 2022 affidavit in connection with the black 2017 Tesla Model X purchased by Matos and Figueroa on December 23, 2021. The original December 10, 2021 affidavit included information ending on November 3, 2021, whereas the second (January 20th) affidavit included additional paragraphs describing surveillance on January 6 and 7, 2022 (as well as the information regarding the December 23, 2021 Tesla

purchase). The January 20th affidavit at paragraph 73—similar to the late-disclosed DEA-6 Investigative Report—references 49 Norman Street as the same address where Defendant traveled after leaving Walmart on September 16, 2021.

Despite the acknowledged importance of the 49 Norman Street address, however, neither the original nor the updated search warrant affidavit included this information, contained in the DEA-6 Investigative Report, showing further connections to 49 Norman Street and possible drug-related activity on November 23, 2021. Defendant argues this newly disclosed information about 49 Norman Street was withheld from the affidavit strategically in order to promote the affiant's opinion focusing on 8 Mereline Avenue. At this preliminary *Franks* stage, the circumstances here support an inference of intentional or reckless omission in order "to fit the Mereline [Avenue] theme." *Gonzalez*, 707 F. Supp. 3d at 49; *see also United States v. Francis*, 132 F.4th 101, 108–09 (1st Cir. 2025) ("For a challenge based on omissions, [the defendant] must show that the omission '[wa]s designed to mislead, or . . . . made in reckless disregard of whether [it] would mislead, the magistrate in his appraisal of the affidavit.'" (quoting *Tanguay*, 787 F.3d at 49)); *Arias*, 848 F.3d at 511 ("Recklessness may be inferred from circumstances evincing obvious reasons to doubt the veracity of the allegations."). Moreover, in light of this court's original conclusion that probable cause already was lacking, the court finds that including this omitted information regarding 49 Norman Street in the affidavit likely would have vitiated probable cause from the perspective of an issuing magistrate. *See United States v. Murray*, 2020 WL 4904758 (D. Mass. Aug. 20, 2020) ("[T]he fact is that the affidavit as submitted—without considering the alleged misrepresentations or omissions—did not make a strong nexus showing to begin with.").

The government argues "drug dealers frequently use multiple locations to stash and prepare drugs" and the fact that probable cause may exist for one location does not mean it is lacking for a different location. (Dkt. No. 185 at 13.) But even assuming drug traffickers often keep relevant

evidence at multiple locations, "this does not relieve the government of its burden to provide specific evidence as to each 'place [to be] searched.'" *Roman*, 942 F.3d at 54 (quoting *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015)). And, as explained, the affiant relied in large part on his opinion as to the location where the Walmart purchases were brought to support the nexus showing as to 8 Mereline Avenue. In fact, the government at oral argument before this court on the four-corners challenge identified the September 16, 2021 Walmart trip as "some of the most recent probable cause" with respect to 8 Mereline Avenue. (Dkt. No. 67 at 14.)[8] In this court's view, the affiant's opinion in this regard—already suspect based on the information contained in the unreformed affidavit—is undermined even more by including the omitted information regarding the November 23, 2021 surveillance of 49 Norman Street. In short, the omitted information, while not groundbreaking, weakens the already-weak nexus showing as to 8 Mereline Avenue by suggesting the movable pill-making operation was operating instead on Norman Street. See *Roman*, 942 F.3d at 53 ("We agree with the district court's conclusion that 'any inference that could permissibly be drawn from [Defendant's] status as a drug dealer regarding the location of evidence is significantly weakened where, as here, it is more likely that such evidence would be found at the residence or business of another individual.'" (quoting *Roman*, 311 F. Supp. 3d at 440)).

In opposing Defendant's *Franks* request, the government argues the disclosure of the late discovery was not even required by Fed. R. Crim. P. 16 or Local Rule 116 and, further, Defendant has not been prejudiced. The discovery argument, however, is contradicted by the government's August 21, 2025 discovery letter, which stated that the additional information and materials were being provided to defense counsel "[i]n accordance with the government's discovery obligations

---

[8] The government also argued at the hearing that the initial stop after Walmart was to "an unrelated address in Springfield," (*id.*), but that is not accurate, as demonstrated by the surveillance of that address on November 23, 2021 and the further connections of vehicles and individuals seemingly involved in the drug operation to 49 Norman Street.

pursuant to Local Rule 116.1(c) and 116.2(b), Fed. R. Crim. P. 16(a)(1), and 18 U.S.C. § 3500." (Dkt. No. 150 at 1.) In any event, the court does not agree with the government's argument on the merits.[9]

Local Rule 116.2 broadly defines "[e]xculpatory information" as "information that is material and favorable to the accused," including "information that tends to . . . cast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731." Local Rule 116.2(a)(2); *see United States v. Jones*, 620 F. Supp. 2d 163, 169-70 (D. Mass. 2009) (explaining that "[t]he revised Local Rules for Criminal Cases of the District of Massachusetts have been widely viewed as valuable and, indeed, worthy of emulation," in part, due to the broad definition of exculpatory information). Accordingly, "to the extent that the government has information tending to cast doubt on or contradict the information set forth in the search warrant affidavit, that information must be produced pursuant to" the Local Rules. *United States v. Monell*, 2013 WL 12437912, at *3 n.4 (D. Mass. Feb. 12, 2013); *see also United States v. Aboshady*, 2017 WL 4540958, at *2 (D. Mass. Oct 11, 2017) ("Thus, in automatic discovery cases, the following is due within 28 days of arraignment (or within 14 days of the government's receipt of a written statement that the defendant will not be waiving automatic discovery): . . . information that would provide a basis for a motion to suppress . . . ."); *United States v. Scott*, 2013 WL 3105615, at *4 (D. Mass. June 17, 2013) ("Local Rule 116.2(a) defines 'exculpatory information' as information that is material and favorable to the defendant 'because it tends to . . . [c]ast doubt on the admissibility of evidence that the government anticipates using in its case-in-chief' or 'that might be subject to a motion to suppress or exclude.'" (quoting Local Rule 116.2(a)(2))); *United States v. Jordan*, 2010 WL 625280, at

---

[9] The government also, seemingly in an effort to address the discovery violation, cites a Tenth Circuit case, *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021), which states "that '[w]hether *Brady*'s disclosure requirements even apply at the motion to suppress stage is an open question." *Id.* (quoting *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013)). This argument lacks merit, as the Local Rules control here and clearly contemplate discovery in advance of suppression hearings. *See* Local Rule 116.2(a)(2).

*3 (D. Mass. Feb. 23, 2010) ("Since establishing that that search warrant affidavit contains false information is the first step in challenging the warrant, information that casts doubt on the accuracy of the information in the search warrant affidavit may 'cast doubt on the admissibility of evidence the government anticipates offering in its case-in-chief, *i.e.*, the fruits of the search. Such information must be produced promptly in accordance with [the Local Rules].'").

For the reasons explained, the omitted information regarding the November 23, 2021 surveillance of 49 Norman Street tends to cast doubt on the affiant's opinion in the search warrant affidavit as to the location of the September 16, 2021 Walmart purchases and, relatedly, the probable cause showing as to 8 Mereline Avenue in general. Therefore, the government was obligated under the Local Rules to provide this information by September 20, 2022, following Defendant's August 23, 2022 arraignment. (Dkt. No. 15.) Defendant, however, was significantly hindered in developing a comprehensive challenge to the search warrant because he was not provided the DEA-6 Investigative Report until after this court's four-corners ruling, the First Circuit's decision on appeal, and this court's denial of a different *Franks* challenge.[10] Since the good-faith exception to the exclusionary rule is available in the face of a four-corners challenge to a search warrant affidavit, but is not available if the defendant makes a successful *Franks* challenge, *see United States v. Roman*, 327 F. Supp. 3d 312, 327-28 (D. Mass. 2018), Defendant was obviously prejudiced by the late disclosure because the First Circuit reversed this court's suppression order based entirely on good faith.[11] If this material had been disclosed in a timely manner, it is very likely that the travel of this case would have

---

[10] Although Defendant filed multiple motions for continuances, it was clear that defense counsel was searching (fruitlessly) for grounds to pursue a *Franks* challenge. Ultimately, the court decided to go forward with the four-corners challenge first but did not foreclose a *Franks* challenge at a later time, if properly supported, and the First Circuit remanded with this understanding as well.

[11] In addition, "while reviewing courts generally afford substantial deference to a magistrate's determination of probable cause, where '[a]llegations of intentional or reckless misstatements or omissions' are proven true, [courts] owe 'no deference to a magistrate's decision' because this 'implicate[s] the very truthfulness, not just the sufficiency, of a warrant application.'" *Roman*, 942 F.3d at 50 (quoting *Burke*, 405 F.3d at 82).

been vastly different and more favorable to Defendant. Accordingly, the court rejects the government's argument that the disclosure of the information regarding the surveillance of 49 Norman Street on September 23, 2021 was not required by the Local Rules and did not prejudice Defendant.

## VI. CONCLUSION

For the foregoing reasons, the court ORDERS that a *Franks* hearing be held consistent with this decision. The parties shall confer and file a joint status report, by January 22, 2026, providing the court with available dates in the following thirty days for the evidentiary *Franks* hearing.

 _/s/ Mark G. Mastroianni_____
MARK G. MASTROIANNI
United States District Judge